**ALPHAGRAPHICS FRANCHISING, INC., et al., Plaintiffs,**

v.

**WHALER GRAPHICS, INC., et al., Defendants.**

**No. CIV 92–757–TUC–WDB.**

United States District Court, D. Arizona.

Jan. 25, 1993.

standard is applicable to this case and these counts fail to allege actual malice.

Marc P. Seidler, John Frederick Verhey, Rudnick & Wolfe, Chicago, IL, Michael John Rusing, Rusing & Lopez, Tucson, AZ, for Alphagraphics Franchising, Inc.

Whaler Graphics Inc., pro se.

John C. Whaley, pro se.

Sharon Whaley, pro se.

## ORDER

WILLIAM D. BROWNING, Chief Judge.

Pending before the Court is Plaintiffs' November 4, 1992 Motion to Compel Arbitration. For the following reasons, the Court will deny the Motion and direct that the arbitration hearings be held in Michigan.

### I. *Factual and Procedural Background*

Plaintiff Alphagraphics, Inc. is a Delaware corporation with its principal place of business in Tucson, Arizona. Plaintiff Alphagraphics Franchising, Inc. is a wholly-owned subsidiary of Alphagraphics, Inc. Defendants John and Sharon Whaley are franchisees. They own and operate an Alphagraphics store in Livonia, Michigan through their corporation, Whaler Graphics, Inc.

The parties entered into a franchise agreement in January 1990. In March 1992, the parties entered into a new form of franchise agreement. The franchise agreements provide for arbitration in Tucson. According to Plaintiffs, almost immediately thereafter, Defendants ("Whaleys") stopped making royalty payments. Additionally, Plaintiffs assert that Defendants failed to pay them $27,000.00, which was due on a promissory note. In September 1992, Plaintiffs filed an arbitration demand against Defendants with the Phoenix regional office of the American Arbitration Association ("AAA"). Defendants have refused to arbitrate in Tucson.

Defendants, however, do not dispute that the dispute is subject to arbitration. They merely contend that the provision in the franchise agreement calling for arbitration in Tucson is overridden by what the Whaleys characterize as Plaintiffs' pre-contractual promises not to enforce the forum selection clause. Thus, the locus of the arbitration is the only issue.

### II. *MFIL Notice*

At the time Plaintiffs presented their franchise offering to Defendants, they also provided Defendants with a two-page notice pursuant to Section 27 of the Michigan Franchise Investment Law ("MFIL Notice"), M.C.L.A. §§ 445.1501–46, as required by the disclosure rules of the Federal Trade Commission. The MFIL Notice, in pertinent part provides, that:

THE STATE OF MICHIGAN PROHIBITS CERTAIN UNFAIR PROVISIONS THAT ARE SOMETIMES IN FRANCHISE DOCUMENTS. IF ANY OF THE FOLLOWING PROVISIONS ARE IN THESE FRANCHISE DOCUMENTS, THE PROVISIONS ARE VOID AND CANNOT BE ENFORCED AGAINST YOU.

. . . .

(f) A provision requiring that arbitration or litigation be conducted outside this state. This shall not preclude the franchisee from entering into an agreement at the time of arbitration to conduct arbitration at a location outside this state.

M.C.L.A. § 445.1527(f). The MFIL requires franchisors to file a notice with Michigan's Attorney General prior to offering franchises in the state. The Whaleys state that Alphagraphics filed such a notice and thereby indicated its intent to abide by Michigan law by providing the two-page notice to them. The Whaleys assert that they relied on the notice and believed that Plaintiffs would honor their commitment not to enforce the franchise agreement's requirement that disputes be arbitrated in Tucson.

Defendants cite the Court to an order issued by the Hon. John Feikens, U.S. District Judge. *See Hambell, et al. v. Alphagraphics Franchising, Inc., et al.,* 779 F.Supp. 910 (E.D.Mich.1991). According to the Whaleys, "[u]nder identical circumstances, Alphagraphics was recently ordered by a U.S. District Court in Detroit, Michigan, to honor

its commitment to another Michigan franchisee not to arbitrate a franchise dispute outside the State of Michigan." Memorandum, at 3.

On December 14, 1992, the Whaleys filed a Supplemental Memorandum indicating that the Phoenix regional office of the AAA had determined that "the appropriate locale for hearings in this matter is Ann Arbor, Michigan." November 30, 1992 AAA Letter (attached to Defendants' Supplemental Memorandum). Alphagraphics, however, notes that the Phoenix regional office of the AAA has agreed to hold the arbitration proceedings in abeyance pending the Court's decision on the locus of the arbitration hearings. *See* December 16, 1992 AAA Letter (attached to Reply as Exhibit A).

### III. *Preemption Under The FAA*

Section 2 of the FAA provides "that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989). The FAA "was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,' and place such agreements 'upon the same footing as other contracts.'" *Id.* (citations omitted). The United States Supreme Court has stated that it "see[s] nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." *Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984).

The FAA does not contain any express preemption provisions and does not indicate a congressional intent to occupy the entire field of arbitration. *Volt*, 489 U.S. at 477, 109 S.Ct. at 1254. "But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be preempted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the full accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Congressional passage of the FAA "was motivated first and foremost by a congressional desire to enforce agreements into which parties had entered." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). "It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478, 109 S.Ct. at 1255.

. . . .

### IV. *Discussion*

■ Because the FAA's primary purpose is to ensure that arbitration agreements are enforced according to their terms and Section 27(f) of the MFIL imposes limitations on the method and manner by which the parties agreed to arbitrate their disputes, it is preempted. A number of courts have found state statutes imposing limitations on the method and manner of arbitration preempted because the statutes conflicted with the FAA's mandate to enforce arbitration agreements on an equal footing with other contracts. *See Saturn Distrib. Corp. v. Williams*, 905 F.2d 719 (4th Cir.), *cert. denied*, 498 U.S. 983, 111 S.Ct. 516, 112 L.Ed.2d 527 (1990); *Securities Indus. Ass'n v. Connolly*, 883 F.2d 1114 (1st Cir.1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990); *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803 (8th Cir.1986); *Collins Radio Co. v. Ex–Cell–O Corp.*, 467 F.2d 995 (8th Cir.1972); *Securities Indus. Ass'n v. Lewis*, 751 F.Supp. 205 (S.D.Fla.1990); *Seymour v. Gloria Jean's Coffee Bean Franchising Corp.*, 732 F.Supp. 988 (D.Minn.1990). In each of the above cases, the state statute placed greater restrictions on arbitration agreements than on other contracts and, thus, the courts held them to be preempted. Here, the Michigan statute at issue is no different.

The Whaleys' reliance on *Hambell, et al. v. Alphagraphics Franchising, Inc., et al.* is inapposite because it does not address the preemption problem.

■ Because enforcement of Section 27(f) of the MFIL is barred, the Whaleys cannot escape enforcement of the forum selection clause "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the only defenses available to the Whaleys against the forum selection clause are grounds such as fraud, duress, mistake, bias, lack of mutuality, or adhesion. The franchise agreement contains an integration clause, which provides that:

> The preambles and exhibits are a part of this Agreement which, together with the Operating Manuals, constitutes the entire agreement of the parties except as provided below, and there are no other oral or written understandings or agreements between COMPANY and FRANCHISEE relating to the subject matter of this Agreement, except that FRANCHISEE acknowledges that COMPANY justifiably has relied on FRANCHISEE'S representations made prior to the execution of this Agreement as set forth in Section 1.

Franchise Agreement ¶ 19k. Plaintiffs contend that, under the parol evidence rule, this integration clause prevents the admission of all prior or contemporaneous representations or agreements that contradict or vary the terms of the franchise agreement. *Thomas v. Goudreault,* 163 Ariz. 159, 167, 786 P.2d 1010, 1018 (Ct.App.1990). Thus, according to Alphagraphics, Defendants cannot argue that the Plaintiffs' representations were fraudulent and, thus, that the integration clause does not prevent the rescission of the contract. Plaintiffs assert that "[e]ven if the Whaleys had sought rescission of the forum selection provision on the grounds of fraud ..., the [MFIL Notice] ... is not a statement of fact, but an opinion or representation of law which is not actionable as fraud." Reply, at 12 (citing *Pleasants v. Home Fed. Sav. & Loan Ass'n,* 116 Ariz. 319, 322, 569 P.2d 261, 264 (Ct.App.1977)). The Court does not agree.

■ Alphagraphics supplies the MFIL Notice to its franchisees in its offering circular, but does not inform them of its intention to insist on enforcement of the forum selection clause if a dispute arises. Plaintiffs' preemption defense remains undisclosed. Plaintiffs' conduct permits the Whaleys to rely on the MFIL Notice. Because of this omission, the Court cannot conclude that there is a meeting of the minds on the forum selection provision. More importantly, this conduct constitutes fraud in the inducement of the contract. Thus, the parol evidence rule is inapplicable. *Lusk Corp. v. Burgess,* 85 Ariz. 90, 93, 332 P.2d 493, 495 (1958); *Formento v. Encanto Business Park,* 154 Ariz. 495, 499, 744 P.2d 22, 26 (Ct.App.1987); *Arnold v. Cesare,* 137 Ariz. 48, 51–52, 668 P.2d 891, 894–95 (Ct.App.1983). Despite the existence of a merger clause, parol evidence is admissible to show that grounds for the revocation or rescission of the contract exist. *Formento,* 154 Ariz. at 499, 744 P.2d at 26 (quoting *Lusk,* 85 Ariz. at 93, 332 P.2d at 495) ("[I]t is well-settled that a party 'can not free himself from fraud by incorporating [an integration clause] in a contract.'"). The fraud is in Plaintiffs' failure to disclose their intentions in regard to the duty imposed by the MFIL rather than in providing the Whaleys with the MFIL Notice, which Plaintiffs describe as "an opinion or representation of law which is not actionable as fraud." Reply, at 12. The unconscionability of Plaintiffs' conduct also enables the Whaleys to escape the application of the parol evidence rule. *Pacific Am. Leasing Corp. v. S.P.E. Bldg. Sys., Inc.,* 152 Ariz. 96, 103, 730 P.2d 273, 280 (Ct.App.1986) ("Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se."). The Court, therefore, will not enforce the forum selection clause against Defendants. The Court will thus deny Plaintiffs' Motion to Compel Arbitration in Tucson, Arizona and direct that the arbitration hearings be held in Ann Arbor, Michigan.

. . . .

## CONCLUSION

Accordingly, IT IS ORDERED that Plaintiffs' November 4, 1992 Motion to Compel Arbitration is DENIED.

IT IS FURTHER ORDERED that the parties arbitrate their dispute in Ann Arbor, Michigan.