[No. D055967. Fourth Dist., Div. One. Jan. 4, 2011.]

MKJA, INC., et al., Plaintiffs and Respondents, v.
123 FIT FRANCHISING, LLC, et al., Defendants and Appellants.

COUNSEL

Snell & Wilmer, Christopher Brent Pinzon, Todd E. Lundell, Elizabeth M. Weldon and Scott C. Sandberg for Defendants and Appellants Joe Ochoa, Raymond Scott Goshon, Neelima Shukla, Brooksy L. Smith, Richard Schaden and 123 Fit Franchising, LLC.

Wilson, Elser, Moskowitz, Edelman & Dicker, Marc Victor Allaria, James Stankowski and Robert Cooper for Defendants and Appellants Mike Severy and Dale Stopp.

Law Offices of Alexander M. Schack, Alexander M. Schack, Geoffrey J. Spreter and Amanda R. Moreno for Plaintiffs and Respondents.

OPINION

AARON, J.—

I.

INTRODUCTION

Code of Civil Procedure section 1281.4[1] requires that a court impose a stay of litigation whenever that court, or another court, has ordered arbitration of a controversy that is an issue in the litigation. The court in which the litigation is pending is required to "stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." (*Ibid.*)

In this case, the trial court lifted a stay of litigation that had been imposed pursuant to section 1281.4, on the ground that plaintiffs could not afford to pay the costs associated with arbitration. We conclude that a party's inability to afford to pay the costs of arbitration is not a ground on which a trial court may lift a stay of litigation that was imposed pursuant to section 1281.4. Accordingly, we reverse the trial court's order lifting the stay.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Code of Civil Procedure.

II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Plaintiffs' complaint*

In September 2006, MKJA, Inc., Kris Roberts, Mike Roberts, Julie Dominguez, Inc., Julie Dominguez, John R. Dominguez, Jr., Corefit, Inc., Lezlie Martin, and Krista Crocker (plaintiffs) filed this action against 123 Fit Franchising, LLC (123 Fit), its affiliates, and various officers and employees of 123 Fit (defendants). In their complaint, plaintiffs alleged that defendants fraudulently induced them to enter into certain health club franchise agreements, and failed to provide them with the operational support that defendants were to provide pursuant to the terms of the agreements.[2] Plaintiffs' complaint included claims for violation of California's Franchise Investment Law (Corp. Code, § 31000 et seq.), breach of contract, unfair business practices (Bus. & Prof. Code, § 17200 et seq.), and fraudulent inducement.

### B. *Defendants' motion to stay the litigation and plaintiffs' motion to declare the arbitration provisions unenforceable*

On or about November 7, 2006, defendants filed a motion to stay this action pursuant to section 1281.4. In their motion, defendants stated that each of the franchise agreements entered into between 123 Fit and plaintiffs contained an identical arbitration provision that required that all of the claims that plaintiffs raised in their lawsuit be arbitrated. Defendants stated that on November 2, 2006, 123 Fit had filed a petition in a Colorado court seeking an order compelling arbitration of plaintiffs' claims against defendants. Defendants noted that section 1281.4 required the California trial court to stay the litigation in order to allow the Colorado court to rule on the petition to compel, and to allow any subsequent arbitration to proceed. Defendants lodged a copy of the Colorado petition and the relevant franchise agreements with their motion.

Each of the franchise agreements contains an identical arbitration provision that provides in relevant part:

"17F. <u>ARBITRATION</u>

---

[2] It is undisputed that 123 Fit entered into three separate franchise agreements: one with MKJA, Inc., and its owners Kris Roberts and Mike Roberts; a second with Julie Dominguez, Inc., and its owners Julie Dominguez and John R. Dominguez, Jr.; and a third with Corefit, Inc., and its owners Lezlie Martin and Krista Crocker.

"We and you agree that, except for controversies, disputes, or claims, related to or based on improper use of the Marks or Confidential Information, all controversies, disputes, or claims between us and our affiliates, and our and their respective shareholders, officers, directors, agents, and/or employees, and you (and/or your owners, guarantors, affiliates, and/or employees) arising out of or related to:

"(1) this Agreement or any other agreement between you and us (or our affiliates);

"(2) our relationship with you;

"(3) the validity of this Agreement or any other agreement between you and us (or our affiliates); or

"(4) any System Standard;

"must be submitted for binding arbitration, on demand of either party, to the American Arbitration Association. The arbitration proceedings will be conducted by one arbitrator and, except as this Subsection otherwise provides, according to the then current commercial arbitration rules of the American Arbitration Association. All proceedings will be conducted at a suitable location chosen by the arbitrator in or within fifteen (15) miles of our then existing principal office.[3] All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.). Judgment upon the arbitrator's award may be entered in any court of competent jurisdiction."

In December 2006, plaintiffs filed a motion to declare the arbitration provisions unenforceable. Plaintiffs also filed an opposition to defendants' motion to stay the litigation.

In January 2007, the trial court entered an order granting defendants' motion to stay the action pursuant to section 1281.4 and denying plaintiffs' motion to declare the arbitration provisions unenforceable. In its order, the trial court noted that 123 Fit had filed a petition to compel arbitration in Colorado. The court stated that section 1281.4 "requires this Court to stay this action pending Colorado's decision on the Petition to Compel Arbitration." The trial court also ruled that it did not have jurisdiction to make a determination concerning the enforceability of the arbitration provisions, and stated, "If the Plaintiffs desire to argue that the Arbitration Clause is unconscionable or against California's public policy, they may raise such arguments before the Colorado court."

---

[3] It is undisputed that 123 Fit's principal offices were located in Denver, Colorado.

C. *Plaintiffs' September 2008 motion to lift the stay and to declare the arbitration provisions unconscionable*

In September 2008, plaintiffs filed a motion in the California trial court to lift the stay of this action and for a declaration that the arbitration provisions in the franchise agreements are unconscionable. In their motion, plaintiffs noted that the Colorado court had granted defendants' motion to compel arbitration in October 2007. Plaintiffs claimed that they had attempted to initiate arbitration of their disputes, but had determined that the costs of arbitration would be prohibitive.

Defendants filed an opposition to the motion in which they argued that section 1281.4 required that the case remain stayed until plaintiffs complied with the Colorado court's order compelling arbitration.

In November 2008, the trial court denied plaintiffs' motion to lift the stay. The court stated that its order was "without prejudice to the possibility of plaintiffs bringing a motion to lift the stay again in the future . . . ." The court explained: "This court is concerned that the arbitration has not yet occurred, and that the plaintiffs may be financially unable to proceed with the arbitration. The plaintiffs are obviously entitled to have their dispute heard on the merits in some forum, whether in arbitration or otherwise. However, the Court is not persuaded, on the present record, that it would be appropriate for this Court to lift its stay and proceed with litigation on the merits of plaintiffs' claims when a Colorado court has ordered the matter to arbitration, and the plaintiffs have not returned to the Colorado court for relief and/or have arguably not exhausted all means of attempting to proceed with the ordered arbitration."

D. *Plaintiffs' August 2009 motion to lift the stay and for a declaration that the arbitration provisions are unconscionable*

In August 2009, plaintiffs filed another motion to lift the stay and for a declaration that the arbitration provisions are unconscionable in the California trial court. In their brief in support of their motion, plaintiffs argued that section 1281.4 provided the trial court with discretion to lift the stay prior to the completion of the arbitration. Plaintiffs claimed that lifting the stay of litigation in California was warranted because they could not afford the costs of arbitrating their cases in Colorado.

With respect to the costs to arbitrate in Colorado, plaintiffs stated: "The total cost of the arbitration would . . . include a $6,000 filing fee, a $2,500 case service fee, the estimated cost of $10,000–$14,000 in arbitrator's fees, and unknown facility fees. Attorneys' fees and travel and accommodation fees have not been determined but are believed to be in excess of $20,000. (This includes attorney time to bring a Colorado attorney up to speed). Total costs to arbitrate in Colorado are estimated at $38,500–$42,500 per case."

Plaintiffs stated that they had attempted to obtain fee waivers from the arbitration association, but had been largely unsuccessful. Each group of plaintiffs also submitted a declaration stating that it could not afford the costs of arbitration. The declarations emphasized the economic losses that plaintiffs had suffered as a result of their failed franchises. Julie Dominguez stated that she had "incurred at least $208,000 in personal debt because of 123 Fit." Lezlie Martin stated that she and Krista Crocker had invested over $253,000 in their franchise, and that she had filed this lawsuit to "try and recoup some of my lost monies." Kris Roberts claimed that she and Mike Roberts had "incurred approximately $300,000–$320,000 in personal debt due to our involvement in the Defendant 123 Fit Franchise." Plaintiffs' counsel also submitted a declaration in which counsel outlined the basis for plaintiffs' estimation of the Colorado arbitration costs, and described counsel's attempts to obtain fee waivers from the arbitration association.

Plaintiffs argued that the "court should lift the stay and determine whether the subject arbitration clause is unconscionable and/or otherwise unenforceable and against California's public policy." Plaintiffs claimed that the arbitration provisions were unconscionable for a number of reasons, including that the provisions lacked mutuality and required that plaintiffs waive non-waivable statutory rights.

Defendants filed an opposition to plaintiffs' motion in which they urged the trial court to again deny plaintiffs' request to lift the stay. Defendants argued that once 123 Fit filed its petition to compel arbitration, section 1281.4 mandated that the court impose the stay, and that the statute further "mandate[d] that the stay remain intact until Plaintiffs comply with the Colorado court's order [to arbitrate]." Defendants maintained that lifting the stay prior to completion of the arbitration would violate the purpose of section 1281.4 by allowing plaintiffs to disregard their obligation to arbitrate in Colorado. Defendants also argued that lifting the stay would contravene the Colorado court's order compelling arbitration, and would thereby violate the full faith and credit clause (U.S. Const., art. IV, § 1). Finally, in the event that the trial court determined that it had jurisdiction to rule on plaintiffs' claims of unconscionability, defendants contended that the arbitration provisions were not unconscionable.

Plaintiffs filed a reply brief in which they reiterated their argument that it was within the trial court's discretion to lift the stay pursuant to section 1281.4. Plaintiffs also argued that lifting the stay would not violate the full faith and credit clause. With respect to unconscionability, plaintiffs raised the additional argument that the arbitration provisions were unconscionable under *Winter v. Window Fashions Professionals, Inc.* (2008) 166 Cal.App.4th 943 [83 Cal.Rptr.3d 89] (*Winter*). In *Winter*, the court affirmed a denial of a petition to compel arbitration on the ground that there was no meeting of the minds as to an arbitration provision in a franchise agreement because the franchisor had provided the prospective franchisees with a uniform franchise offering circular that stated that the arbitration provision might not be enforceable in California. (*Id.* at p. 945.) Plaintiffs argued that defendants had provided them with a similarly worded uniform franchise offering circular in this case, and that the arbitration provisions in their franchise agreements were therefore unenforceable under the holding in *Winter*.

The trial court held a hearing on plaintiffs' motion and subsequently entered an order lifting the stay of litigation and declaring the arbitration provisions unenforceable and/or unconscionable. In its order, the court reasoned in part as follows:

"Each of the three sets of plaintiffs has sought to commence an arbitration with AAA [(the American Arbitration Association)] in Colorado but they have been unable to pay the fees associated with such arbitration. The estimated costs of each arbitration include a $6,000 filing fee, a $2,500 case service fee and an estimated $10,000–$14,000 in arbitrator's fees and facility fees of an unknown amount. The AAA apparently does not allow consolidation of cases, so each of the three sets of plaintiffs will have to separately pay for, and conduct, his/her own arbitration. Each of the individual plaintiffs asserts that he/she is in financial distress and unable to pay the fees and costs of the arbitration.

"The plaintiffs have sought a waiver of filing fees from AAA; a deferral of some fees was granted but a waiver of the fees was denied. The plaintiffs have also been advised that AAA will not defer or waive the other costs of arbitration, such as the arbitrator's fees and expenses. [¶] . . . [¶]

". . . The Court is now satisfied that plaintiffs have exhausted all reasonable options for attempting to proceed with the arbitration despite their financial distress. The Court is satisfied that plaintiffs have not been able to arbitrate their claims with AAA due to their financial inability to pay the fees and costs associated with those arbitrations. [¶] . . . [¶] . . . The Court is unaware of any controlling appellate authority addressing whether a financial inability of a party to pay the costs of arbitration is a circumstance that warrants lifting

[the] stay. . . . In the absence of such authority, the Court believes the Legislature's use of the phrase 'such earlier time as the court specifies [in section 1281.4]' grants discretion to the Court to lift the stay of litigation in an appropriate case of this type. Therefore, looking at the totality of the circumstances of this case, the Court believes that it would be appropriate to lift the stay at this time as authorized by [section] 1281.4."

The trial court also concluded that lifting the stay would not violate the full faith and credit clause. In addition to lifting the stay, the trial court concluded that the arbitration provisions were unconscionable and/or unenforceable under *Winter*, stating that the "facts of this case are indistinguishable from those in [*Winter*]."

### E. *Defendants' appeal*

Defendants timely appealed from the trial court's September 10, 2009 order lifting the stay and declaring the arbitration provisions unconscionable and/or unenforceable.

### III.

### DISCUSSION

### A. *Appealability*

We first consider the threshold issue of whether this court has appellate jurisdiction over defendants' appeal. Defendants seek to appeal a trial court's order in which the court both lifted a stay of litigation pending arbitration pursuant to section 1281.4, and declared the arbitration provisions in the franchise agreements unenforceable.

#### 1. *Governing law*

##### a. *The appealability of an order that is the functional equivalent of an order denying a petition to compel arbitration*

Section 1294 provides in relevant part: "An aggrieved party may appeal from: [¶] (a) [a]n order dismissing or denying a petition to compel arbitration."

In *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 99 [284 Cal.Rptr. 255] (*Henry*), the court concluded that an order that was "the functional equivalent of an order refusing to compel arbitration" was appealable pursuant to section 1294, subdivision (a). In *Henry*, the plaintiff (Henry) filed a lawsuit against a defendant mortgage loan broker (Alcove) and

Alcove's alleged agent (Hazan). (*Henry, supra*, at pp. 97–98.) In his complaint, Henry claimed that Hazan had told him that Hazan's company would perform various improvement projects on Henry's home and that Hazan would arrange for a loan to finance the work. (*Id.* at p. 97.) Henry claimed that Hazan and Alcove defrauded him in connection with his loan application. (*Ibid.*) Alcove initiated arbitration proceedings against Henry with the American Arbitration Association pursuant to an arbitration provision in Henry's loan application. (*Id.* at p. 98.) Henry filed a motion to stay the arbitration based on several grounds, including that a stay was warranted pursuant to section 1281.2, subdivision (c)[4] due to the possibility of conflicting rulings in the arbitration and the litigation. (*Henry, supra*, at p. 98.) The trial court granted the motion to stay arbitration, and Alcove appealed. (*Ibid.*)

On appeal, Henry claimed that the court had to dismiss Alcove's appeal because the appeal was taken from a nonappealable order. (*Henry, supra*, 233 Cal.App.3d at p. 98.) The Court of Appeal disagreed, holding that "an order staying arbitration under . . . section 1281.2 should be treated the same as an order denying a petition to compel arbitration[,] which is appealable under section 1294, subdivision (a)." (*Henry, supra*, at p. 98, fns. omitted.) In reaching this conclusion, the *Henry* court reasoned in part: "An order refusing to compel arbitration, if not reviewed immediately, would significantly delay arbitration and defeat its purpose. The order would force the party seeking arbitration to proceed with a potentially lengthy and costly trial and, if dissatisfied with the result, appeal from the final judgment. [Citation.] By the time the Court of Appeal overturned the trial court's order, the value of the right to arbitrate would be significantly diminished by the delay and expense of litigation. The Legislature's dissatisfaction with this result led it to enact section 1294, subdivision (a) which specifically authorizes an appeal from an order 'dismissing or denying a petition to compel arbitration. . . .' [Citation.] As the court recognized in [*The Energy Group, Inc. v. Liddington* (1987) 192 Cal.App.3d 1520 [238 Cal.Rptr. 202]], an order staying arbitration is merely the flip side of an order refusing to compel arbitration and should be treated

---

[4] Section 1281.2 provides in relevant part:

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶]

"(c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . . [¶] . . . [¶]

"If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court . . . may stay arbitration pending the outcome of the court action or special proceeding."

the same for purposes of appellate review." (*Henry, supra*, at pp. 99–100; accord, *International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 704 [199 Cal.Rptr. 690] ["Permitting an appeal from a judgment *granting* a petition for an injunction [preventing arbitration] . . . would of course be consistent with the spirit and purpose of Code of Civil Procedure section 1294."].)

> b. *An order denying a stay of litigation pending arbitration may be reviewed in an appeal from an appealable order when the order denying the stay affects the appealable order*

Section 1294.2 provides in relevant part, "Upon an appeal from any order or judgment under this title, the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party."

An order denying a stay of litigation pending arbitration may be reviewed pursuant to section 1294.2 upon an appeal from an order made appealable pursuant to section 1294. (E.g., *Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 612, fn. 5 [94 Cal.Rptr.3d 526].)

### 2. *Application*

■ Although 123 Fit did not file a petition to compel arbitration in California, it did file a petition to compel arbitration in Colorado. By filing that petition, 123 Fit has evinced its intent to enforce the arbitration agreement. (See *Henry, supra*, 233 Cal.App.3d at p. 98 ["Alcove did not petition the trial court for an order to compel arbitration but it made clear to Mr. Henry it intended to pursue the arbitration."].) The trial court's order declaring the arbitration provisions unenforceable effectively prevents 123 Fit from enforcing the arbitration provisions in the franchise agreements, since it is undisputed that plaintiffs intend to litigate their claims against 123 Fit in California. As in *Henry*, if the trial court's order were not appealable, 123 Fit would be forced to proceed with litigation to a final judgment, and its alleged right to arbitrate would thus be frustrated. For these reasons, we conclude that the trial court's order declaring the arbitration provisions unenforceable is appealable pursuant to section 1294, subdivision (a) as the functional equivalent of an order denying a petition to compel arbitration.

Although plaintiffs acknowledge that the trial court's ruling that the arbitration provisions are unenforceable is "arguably appealable as [the] 'functional equivalent' of the denial of a Petition to compel arbitration," they argue that defendants should be "equitably estopped," from raising this

argument because defendants sought arbitration in Colorado rather than in California. We are aware of no authority, and plaintiffs cite none, that has applied the doctrine of equitable estoppel in determining whether a court has appellate jurisdiction over an appeal. In any event, we reject plaintiffs' contention that defendants' "inequitable conduct" supports dismissal of this appeal. 123 Fit sought arbitration in Colorado based on an arbitration agreement that provides that all arbitration proceedings are to be conducted in Colorado. There is nothing about this conduct that would warrant dismissal of defendants' appeal.

■ In addition, we may review the trial court's order lifting a stay of the litigation pursuant to section 1294.2, in light of defendants' appeal from the court's order declaring the arbitration provisions unenforceable, since we have concluded that the latter is an appealable order. The trial court's lifting the stay was a necessary prerequisite to the trial court issuing a ruling on plaintiffs' motion to declare the arbitration provisions unenforceable. (See pt. III.C., *post*.) The trial court's ruling lifting the stay is therefore reviewable pursuant to section 1294.2. (E.g., *Valentine Capital Asset Management, Inc. v. Agahi, supra,* 174 Cal.App.4th at p. 612, fn. 5.) Accordingly, we reject plaintiffs' argument that we may not review the trial court's order insofar as it granted plaintiffs' motion to lift the stay because that "portion of the order is not appealable."

B. *A trial court may not lift a stay of litigation imposed pursuant to section 1281.4 on the ground that plaintiffs cannot afford to pay the costs of arbitration*[5]

Defendants claim that the trial court erred in lifting the stay that the court previously imposed pursuant to section 1281.4 pending arbitration of the

---

[5] In their November 2006 motion for a stay of litigation, defendants claimed that both the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA), and the California Arbitration Act (§ 1280 et seq.), required that this action be stayed. In its January 2007 order, the trial court ruled that "[s]ince the court is required to stay this action pursuant to [section] 1281.4, there is no need to consider whether the FAA also requires a stay." None of the parties discussed whether the FAA required a stay of this action in its briefing on plaintiffs' August 2009 motion to lift the stay. The trial court did not address the FAA in its September 10, 2009 order lifting the stay. None of the parties has discussed the FAA on appeal. We therefore assume for purposes of this decision that the California Arbitration Act governs the issue of whether the trial court erred in lifting the stay.

In light of our conclusion that the trial court lacked statutory authority to lift the stay of litigation, we need not address defendants' claim that the trial court's order lifting the stay violates the full faith and credit clause (U.S. Const., art. IV, § 1) by failing to give effect to the Colorado court's order compelling arbitration.

parties' disputes.[6] Specifically, defendants contend that section 1281.4 does not permit a trial court to lift a stay of litigation pending arbitration of a dispute on the ground that a party cannot afford to pay the costs associated with the arbitration. This claim raises an issue of statutory interpretation, which is subject to the de novo standard of review. (See *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 [99 Cal.Rptr.3d 209] ["We apply the de novo standard of review to this claim, since the claim raises an issue of statutory interpretation."]; *Cardiff Equities, Inc. v. Superior Court* (2008) 166 Cal.App.4th 1541, 1548 [83 Cal.Rptr.3d 699] [applying de novo standard of review to "legal question" of whether case was properly stayed pursuant to § 1281.4].)

### 1. *General principles of statutory interpretation*

In *Doe v. Brown, supra*, 177 Cal.App.4th at pages 417–418, this court outlined the following well-established principles of statutory interpretation:

■ " 'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' [Citation.]

■ " 'If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will "examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes," and we can " ' "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " [Citation.]' [Citation.]

" ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]"

---

[6] In January 2007, Judge Anello imposed the stay of the litigation. In May 2008, the case was reassigned to Judge Dahlquist. In September 2009, Judge Dahlquist issued the order lifting the stay.

## 2. Section 1281.4

Section 1281.4 provides:

"If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.

"If an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.

"If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

■ "The purpose of the statutory stay [required pursuant to section 1281.4] is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved. [Citations.] [¶] In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective. [Citation.]" (*Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374–1375 [71 Cal.Rptr.2d 164] (*Federal Ins. Co.*).)

In *SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1199–1200 [58 Cal.Rptr.3d 904] (*SWAB Financial*), the Court of Appeal emphasized that, after granting a petition to compel arbitration and staying a lawsuit, the scope of jurisdiction that a trial court retains is extremely narrow: "The trial court was . . . authorized under Code of Civil Procedure section 1281.4 to stay pending judicial actions. But beyond that, the trial court's power to interfere in the pending arbitration was strictly limited. [Citations.] . . . [¶] . . . '. . . Once a petition is granted and the lawsuit is stayed, "the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration." [Citation.] During that time, under its "vestigial" jurisdiction, a court may: appoint arbitrators if the method selected by the parties fails

([Code Civ. Proc.,] § 1281.6); grant a provisional remedy "but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief" ([Code Civ. Proc.,] § 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award ([Code Civ. Proc.,] § 1285). Absent an agreement to withdraw the controversy from arbitration, however, no other judicial act is authorized. [Citation.]' "

In *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487 [35 Cal.Rptr.2d 4] (*Titan/Value*), this court held that a trial court exceeded the vestigial jurisdiction that it retained after staying a lawsuit pending arbitration pursuant to section 1281.4. In *Titan/Value*, the trial court stayed an action pending arbitration between the plaintiffs and certain securities dealers. (*Titan/Value, supra*, at p. 485.)[7] As a result of a series of problems, including the bankruptcy of certain defendants, various discovery disputes, and scheduling conflicts, the "arbitration never got off the ground." (29 Cal.App.4th at p. 485.) The plaintiffs requested that the trial court " 'take control of the case.' " (*Ibid.*) In response, the trial court "reasserted jurisdiction" over the case. (*Ibid.*) The court proceeded to enter an order that directed certain defendants to respond to various discovery requests, directed that an arbitration occur by a specified date, and left a trial date on the court's calendar so that the case could be tried if the arbitration were not completed by the specified date. (*Id.* at p. 486.) The defendants filed a petition for writ of mandate or prohibition in this court. (*Ibid.*)

The *Titan/Value* court issued a writ of prohibition directing the trial court to vacate its order, stating, "[T]he trial court exceeded its jurisdiction in ordering the arbitration to proceed under the stated conditions subject to reinstatement on the trial calendar." (*Titan/Value, supra*, 29 Cal.App.4th at p. 488.) The *Titan/Value* court explained, "[A] trial court may not step into a case submitted to arbitration and . . . set the case for trial because of a party's alleged dilatory conduct." (*Id.* at p. 489.) This court reasoned that whether a party is frustrating the other party's right to arbitration is a question for the arbitrator, not the trial court, to resolve. (*Ibid.*)

 3. *A trial court's authority to lift a stay imposed under*
 *section 1281.4*

This case involves the circumstances under which a trial court may properly lift a stay pursuant to that portion of section 1281.4 that provides that a trial court may stay an action until arbitration is completed, "or until such earlier time as the court specifies." We have found no published case

---

[7] The *Titan/Value* court explained that some of the parties had agreed to arbitrate their dispute, and that the trial court had granted a petition to compel arbitration filed by one of the defendants. (*Titan/Value, supra*, 29 Cal.App.4th at pp. 485–486.)

that has addressed the circumstances under which a trial court may lift a stay entered pursuant to section 1281.4, prior to the completion of an arbitration. Defendants contend that to interpret section 1281.4 as granting a trial court "unfettered discretion" to lift a stay imposed pursuant to that statute would lead to an absurd result. Specifically, defendants note that section 1281.4 mandates that the trial court impose a stay of litigation once arbitration is ordered, and maintain that it would make no sense to interpret the same provision as allowing a trial court "full discretion" to lift the stay while the arbitration is still pending. Plaintiffs counter that the "plain meaning" of section 1281.4 provides a trial court with discretion to lift a stay imposed pursuant to that section.

■ We assume, for purposes of this decision, that a trial court possesses some amount of discretion to lift a stay imposed pursuant to section 1281.4, prior to the completion of an ordered arbitration. However, the statute does not address the scope of that discretion. Based on the purpose of section 1281.4 as stated by the *Federal Ins. Co.* court and the context in which the operative statutory language appears, we conclude that a trial court may not lift a stay of litigation merely because a party cannot afford the costs associated with arbitration.

As discussed above, the purpose of section 1281.4 is to protect the jurisdiction of the arbitrator by preserving the status quo until the arbitration is resolved. (*Federal Ins. Co., supra*, 60 Cal.App.4th at pp. 1374–1375.) Preserving the arbitrator's jurisdiction through a stay of related litigation is essential to the enforceability of an arbitration agreement since, in the absence of such a stay, a party could simply litigate claims that it had agreed to arbitrate. Given the purpose of the statute, the most reasonable interpretation of the stay provision is that it grants a trial court discretion to lift a stay prior to the completion of arbitration only under circumstances in which lifting the stay would not frustrate the arbitrator's jurisdiction.

The context in which the critical statutory language appears suggests at least one narrow circumstance under which the Legislature may have intended that a trial court be authorized to lift a stay entered pursuant to section 1281.4 prior to the completion of arbitration, without contravening the purpose of the statute. The final paragraph of section 1281.4 provides: "If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only." If an issue in litigation subject to a stay is removed from the litigation (e.g., where a party amends its complaint to

remove the arbitrable claim from the litigation) or the arbitrable controversy is removed from the arbitration (e.g., through agreement of the parties) such that the arbitrator's jurisdiction would not be frustrated by the litigation, there would be no reason for a stay of the litigation to remain in effect. (Accord, *SWAB Financial, supra,* 150 Cal.App.4th at p. 1200 ["Absent an agreement to withdraw the controversy from arbitration, however, no other judicial act is authorized."].)

In contrast, lifting a stay of litigation based merely upon a determination that a party cannot afford the costs associated with arbitration would directly and materially impede the arbitrator's jurisdiction, and would thus contravene the purpose of section 1281.4. Further, ensuring that litigation will be stayed is essential to the enforceability of arbitration agreements generally. Interpreting section 1281.4 to broadly permit a trial court to allow litigation to proceed whenever the court determines that a party cannot afford the costs of arbitration, as plaintiffs urge, would be fundamentally inconsistent with California's "strong public policy favoring contractual arbitration." (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 704 [111 Cal.Rptr.3d 876].)[8]

Finally, permitting a trial court to lift a stay merely upon a determination that a party cannot afford arbitration would be inconsistent with well-established case law holding that a trial court retains only a very narrow scope of jurisdiction with respect to an action that has been stayed pending arbitration. (E.g., *SWAB Financial, supra,* 150 Cal.App.4th at pp. 1199–1200; *Titan/Value, supra,* 29 Cal.App.4th at p. 487.) Further, because it was a court in a sister state that ordered the case to arbitration, the scope of jurisdiction that the trial court in this case possessed was even narrower than that possessed by the courts in *SWAB Financial* and *Titan/Value.* The courts in *SWAB Financial* and *Titan/Value* discussed the vestigial jurisdiction that a court retains when *that court* has granted a petition to compel arbitration. In this case, unlike in *SWAB Financial* and *Titan/Value,* a Colorado court granted the petition to compel arbitration. The California trial court's connection to the parties' arbitration was therefore even more attenuated than in the cases cited. If a trial court "exceed[s] its jurisdiction" under section 1281.4 by setting a case for trial on the ground that the party resisting litigation has

---

[8] We express no opinion with respect to the issue of the circumstances under which an arbitration provision may be declared unconscionable on the ground that it imposes prohibitive costs on a party to the agreement. (See *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554 [98 Cal.Rptr.3d 743].)

engaged in dilatory conduct inhibiting an arbitration (*Titan/Value, supra,* 29 Cal.App.4th at p. 488), then the California court in this case clearly "exceed[ed] its jurisdiction" (*ibid.*) under section 1281.4 by lifting a stay of litigation imposed pursuant to that section merely because the parties seeking to litigate maintain that they cannot afford the costs associated with the arbitration ordered by a Colorado court.

C. *The trial court lacked jurisdiction to declare the arbitration provisions unenforceable and/or unconscionable*

In addition to lifting the stay of litigation, in its September 10, 2009 order, the trial court also declared the arbitration provisions to be unenforceable and/or unconscionable. Because the stay was improperly lifted, the trial court lacked jurisdiction to declare the arbitration provisions unenforceable and/or unconscionable.[9]

 As noted above, once a lawsuit has been stayed pursuant to section 1281.4, a trial court possesses only a limited " ' "vestigial jurisdiction over matters submitted to arbitration." [Citation.]' " (*SWAB Financial, supra,* 150 Cal.App.4th at p. 1200.) After a petition to compel arbitration has been granted and a lawsuit stayed, " 'the arbitrator takes over. It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy.' " (*Ibid.*) A trial court's "vestigial jurisdiction" (*ibid.*) over an action stayed pending arbitration clearly does not extend so far as to permit the court to declare an arbitration provision unconscionable and/or unenforceable, and certainly not in a case in which the enforceability of the arbitration agreement has already been decided by a court in another state. Because the trial court lacked authority to lift the stay, it clearly lacked jurisdiction to declare the arbitration provisions unenforceable and/or unconscionable.[10]

---

[9] As noted in part II.D., *ante,* the trial court concluded that the arbitration provisions were unconscionable and/or unenforceable under *Winter, supra,* 166 Cal.App.4th 943. In light of our conclusion that the trial court lacked jurisdiction to declare the provisions unenforceable and/or unconscionable, we need not address defendants' argument that the trial court erred in relying on *Winter* because that case is distinguishable and was wrongly decided.

[10] Plaintiffs do not contend that the trial court could declare the arbitration provisions unenforceable and/or unconscionable *without* having properly lifted the stay. Plaintiffs note, "The sequence of the Court's ruling was not to declare the arbitration provision unenforceable and then lift the stay. Rather . . . the Court first lifted the stay, and then analyzed the outstanding issues." We agree. In its September 10 order, the trial court stated: "[T]he Court hereby orders that the stay is lifted. [¶] Plaintiffs also request that this Court declare the arbitration provisions of the franchise agreement unenforceable and/or unconscionable. In this regard, now the stay has been lifted, the Court concludes that [the arbitration agreement is unenforceable and/or unconscionable]."

## IV.

## DISPOSITION

The trial court's September 10, 2009 order is reversed. Defendants are entitled to costs on appeal.

McConnell, P. J., and Huffman, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 20, 2011, S190551.